1
2
3
4
5
6
7
8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NICHOLAS NOTTOLI

11               Plaintiff,              No. CIV S-09-0609 EFB (TEMP)

12        vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
                 Defendant.            ORDER
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

18   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

19   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

20   summary judgment or remand and grant the Commissioner's cross-motion for summary

21   judgment.

22    I.  BACKGROUND

23        Plaintiff filed applications for DIB and SSI on December 22, 2005, alleging a disability

24   onset date of November 20, 2003.  Administrative Record ("AR") 89-91, 92-96.  The

25   applications were denied initially and upon reconsideration.  *Id.* at 57-61, 63-68.  A hearing was

26   held on February 6, 2008 before Administrative Law Judge ("ALJ") Laura Speck Havens, at

                                              1

which plaintiff and a vocational expert testified.  *Id.* at 33-52.  In a decision dated April 30,

2008, the ALJ determined plaintiff was not disabled.[1]  *Id.* at 25-32.

       The ALJ made the following specific findings:

> 1.  The claimant met the insured status requirements of the Social Security Act through December 1, 2006.
>
> 2.  The claimant has not engaged in substantial gainful activity since November 20, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*)
>
> 3.  The claimant has the following severe impairments:  left and right hand impairments (20 CFR 404.1520(c) and 416.920(c)).
> ...

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

       The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

4.  The claimant does not have an impairment or combination of impairments that meets of medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

...

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can lift 20 pounds occasionally and 10 pounds frequently; sit/stand/walk for 6 out of 8 hours; can occasionally push/pull with the upper extremity; and can occasionally reach, handle and feel.

...

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

...

7.  The claimant was born on March 8, 1959 and 2as 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

...

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

...

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

...

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

...

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 17, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 27-31.

////

////

1    Plaintiff requested that the Appeals Council review the ALJ's decision.  However, on

2  January 6, 2009, the Appeals Council denied review, leaving the ALJ's decision as the final

3  decision of the Commissioner of Social Security.  *Id.* at 1-4.

4    This appeal followed.  Plaintiff contends the ALJ improperly assessed his residual

5  functional capacity by improperly rejecting the opinion of a treating nurse practitioner and

6  improperly discrediting plaintiff and laywitnesses.  Plaintiff further contends that the

7  hypothetical posed to the vocational expert and relied on by the ALJ was incomplete.  Dckt. No.

8  22.

9  II.  LEGAL STANDARDS

10    The Commissioner's decision that a claimant is not disabled will be upheld if the findings

11  of fact are supported by substantial evidence in the record and the proper legal standards were

12  applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

13  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

14  180 F.3d 1094, 1097 (9th Cir. 1999).

15    The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16  conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

17  more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

18  (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

19  support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

20  *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

21    "The ALJ is responsible for determining credibility, resolving conflicts in medical

22  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

23  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

24  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

25  *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

26  ////

4

III.  ANALYSIS

A.  Medical Evidence and Opinions

Plaintiff contends the ALJ committed error at step two by failing to find that plaintiff's obesity, coronary artery disease, and sleep apnea were severe impairments.  An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR[2] 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  *Bowen v. Yuckert,* 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater* 80 F.3d 1273, 1290 (9th Cir. 1996).

A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities.  Put another way, a medical diagnosis does not an impairment make.  There is no evidentiary support for plaintiff's contention that there are functional limitations attributable to plaintiff's obesity, coronary artery disease, or sleep apnea.  No physician or treating medical practitioner assessed any limitations attributable to obesity.  AR 407-409 (plaintiff's height and weight recorded as 6'2", 300 lb., no functional limitations assessed due to obesity); 415, 487 (functional assessments by nurse practitioner attributed limitations only due to hand impairment, assessed no limitations in sitting, standing or walking); 308-315,410-412 (in assessments by state agency physicians, no limitations due to obesity).  Plaintiff suffered a heart attack on November 20, 2003 but it was unclear at the time whether the myocardial infarct was due to atherosclerotic coronary artery

---

[2]  Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).  Social Security Rulings are "binding on all components of the Social Security Administration."  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

1   disease or amphetamine abuse.  AR 236, 238.  When presenting at the emergency room in

2   December 2003, the treating physician assessed the chest pain as "noncardiac."  AR 178.

3   Treatment thereafter yielded a normal stress test and plaintiff reported feeling well with no

4   symptoms.  AR 252-253, 231, 233-234, 250-251, 300.  In May, 2007, plaintiff reported to the

5   examining internal medicine specialist that he had not had any chest pain for nine months and

6   that any pain was controlled with nitroglycerin; the specialist concluded that plaintiff's coronary

7   artery disease was stable.  AR 406, 409.  Although plaintiff occasionally complained of fatigue,

8   plaintiff was prescribed a C-pap machine and reported that he was doing better with the machine.

9   AR 362, 392.  There was no error in the step two analysis.

10          Plaintiff also contends the ALJ improperly disregarded the opinion of treating family

11   nurse practitioner Alice Zapp ("FNP Zapp").  The weight given to medical opinions depends in

12   part on whether they are proffered by treating, examining, or non-examining professionals.

13   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the

14   opinion of a treating professional, who has a greater opportunity to know and observe the patient

15   as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

16          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

17   considering its source, the court considers whether (1) contradictory opinions are in the record,

18   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

19   treating or examining medical professional only for "clear and convincing" reasons.  *Lester,* 81

20   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

21   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  *Id.* at

22   830.  While a treating professional's opinion generally is accorded superior weight, if it is

23   contradicted by a supported examining professional's opinion (e.g., supported by different

24   independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

25   1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  In

26   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

1   findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

2   minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.  The opinion of a

3   non-examining professional, without other evidence, is insufficient to reject the opinion of a

4   treating or examining professional.  *Lester*, 81 F.3d at 831.

5        FNP Zapp opined in a questionnaire dated October 1, 2007 that plaintiff could

6   occasionally lift and carry up to ten pounds with the left hand, could never use the right hand,

7   could only occasionally reach, handle, feel, and push/pull and that plaintiff could do more with

8   the left hand.  AR 414-417.  FNP Zapp also opined in a form filled out for purposes of state

9   disability insurance that plaintiff was not capable of performing his "regular work."  AR 305.  In

10  contrast, examining board certified internal medical specialist Dr. Rashid Elahi, M.D. assessed

11  on May 29, 2007, that plaintiff could occasionally lift 20 pounds and 10 pounds frequently with

12  caution and with occasional manipulative activities of reaching, handling, grasping, feeling and

13  fingering.  AR 405-409.  The state agency physicians assessed limitations similar to those of Dr.

14  Elahi.  AR 308-315, 410-412.

15       A family nurse practitioner is not considered an "acceptable source" but rather an "other

16  source" of information.  20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e).  No specific guidelines

17  exist for weighing opinions from "other sources."  Accordingly, opinions from "other sources"

18  are given less weight than opinions from "acceptable medical sources."  In this case, the ALJ

19  specifically noted that FNP Zapp is not a medical doctor and accorded little weight to FNP

20  Zapp's assessment on the grounds it was inconsistent with the weight of the evidence of record.

21  AR 30.  The ALJ similarly rejected FNP Zapp's conclusion that plaintiff could not perform his

22  prior work as unsupported by the record and because this determination was on an issue reserved

23  to the Commissioner.  AR 30.  Even if FNP Zapp is considered to be a treating doctor because

24  she was apparently supervised by a physician (AR 303, FNP Zapp discussed progress note of

25  another doctor with Dr. Steele), and thus an acceptable medical source, the court finds no error

26  in the ALJ's resolution in the conflict between FNP Zapp's opinion and that of Dr. Elahi, whose

1   opinion was based on his own clinical findings.  Dr. Elahi's opinion is also consistent with the

2   record as a whole and is supported by the assessments of the state agency physicians.  AR 29,

3   308-315,410-412.  The ALJ gave a specific and legitimate reason for rejecting FNP Zapp's

4   opinion and that reason was supported by substantial evidence.

5       B.  Credibility of Plaintiff

6       Plaintiff further contends the ALJ did not set forth proper reasons for finding plaintiff's

7   subjective complaints not credible.  The ALJ determines whether a disability applicant is

8   credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and

9   provided proper reasons.  *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  If

10  credibility is critical, the ALJ must make an explicit credibility finding.  *Albalos v. Sullivan*, 907

11  F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)

12  (requiring explicit credibility finding to be supported by "a specific, cogent reason for the

13  disbelief").

14      In evaluating whether subjective complaints are credible, the ALJ should first determine

15  whether the claimant has presented objective medical evidence of an underlying impairment

16  "which could reasonably be expected to produce the pain or other symptoms alleged."  *Bunnell*

17  *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence

18  of an impairment, the ALJ then may consider the nature of the symptoms alleged, including

19  aggravating factors, medication, treatment and functional restrictions.  *Id.* at 345-47.  The ALJ

20  also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or

21  other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment

22  or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  *Orn v.*

23  *Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

24  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

25  reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan v.*

26  *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lingenfelter v. Astrue*,

8

1   504 F.3d 1028, 1036 (9th Cir. 2007).  To support a lack of credibility finding, the ALJ must

2   "point to specific facts in the record which demonstrate that [the claimant is in less pain or the

3   claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*, 547 F.3d 1101, 1105

4   (9th Cir. 2008).

5           The ALJ set forth four reasons for discrediting plaintiff.  The ALJ properly concluded

6   that plaintiff's activities of daily living were inconsistent with plaintiff's allegations of extreme

7   and disabling symptoms.  AR 28, 39-41 (plaintiff testified he could cook, vacuum, take out trash,

8   watch television 3-4 hours per day, ride bike 10 minutes, walk around the block, do some

9   laundry but with difficulty, do yard work, dress and bathe himself).  While plaintiff contests the

10  ALJ's characterization of plaintiff's ability to engage in activities that can translate to a work

11  setting, the court concludes the ALJ's interpretation is a reasonable one.  The ALJ also noted

12  that plaintiff had not received on-going and continuous treatment for the allegedly debilitating

13  impairments.  AR 28-29.  Although plaintiff is correct that the record shows plaintiff lost his

14  insurance coverage in June, 2006, this does not explain the lack of treatment for the times when

15  plaintiff was covered by insurance.  Also appropriately considered were the lack of objective

16  findings to support the extreme limitations plaintiff claimed.  Finally, the ALJ factored in the

17  credibility analysis her own observations of plaintiff at the hearings.  AR 29.  Evasiveness,

18  general demeanor and behavior at the hearing are appropriately factored into the credibility

19  determination.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992); *see also Orn v.*

20  *Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); SSR 96-7p.

21          Here, the ALJ's credibility findings were thoroughly explained and supported in the

22  ALJ's decision.  Although plaintiff may disagree with the specific findings, because the findings

23  were supported by clear and convincing evidence in the record, the court will not second-guess

24  that finding.  *Thomas*, 278 F.3d at 959.  Therefore, plaintiff's challenge on this ground fails.

25  ////

26  ////

C.  Laywitness Evidence

Plaintiff contends the ALJ also committed error in rejecting the evidence from plaintiff's mother and sister.  "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition); 20 C.F.R. § 404.1513(d)(4) (providing that evidence provided by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work").

Here, the ALJ did not ignore the testimony of plaintiff's mother and sister.  With regard to that testimony, the ALJ specifically described this evidence.  AR 28.  The ALJ then set forth the reasons for rejecting this testimony, i.e. that is was not based on medical expertise and "likely reflects the claimant's symptomatological [sic] exaggerations."  AR 29.  The laywitness statements are consistent with the testimony of plaintiff, but as discussed above, plaintiff's testimony, to the extent it was inconsistent with an ability to perform any work, was properly discredited.  *See Valentine v. Astrue*, 574 F.3d 685,694 (9th Cir. 2009) (where clear and convincing reasons given for rejecting subjective complaints of plaintiff and third party testimony mirrors plaintiff's, germane reasons given for rejecting third party evidence).  There was no error in the ALJ's conclusion that this laywitness testimony does not support plaintiff's allegations of disability and the reasons given were germane to these witnesses.

D.  Vocational Expert

Finally, plaintiff contends the ALJ failed to include all of plaintiff's limitations in the hypotheticals relied on by the ALJ in finding there were a significant number of jobs which plaintiff can perform.  Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

10

1  limitations, the expert's testimony as to jobs in the national economy has no evidentiary value.

2  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a

3  range of hypothetical questions, based on alternate interpretations of the evidence, the

4  hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

5  substantial evidence in the record as a whole.  *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir.

6  1988).

7        As discussed above, the ALJ properly assessed plaintiff's residual functional capacity

8  and was not required to include the additional limitations posited by plaintiff's counsel in the

9  hypotheticals posed to the vocational expert.  The hypothetical posed to the vocational expert by

10  the ALJ, and ultimately relied on by the ALJ, included limitations of occasional pushing or

11  pulling, and occasional reaching, handling and feeling bilaterally.  AR 47-48.  These limitations

12  were properly assessed by the ALJ, were supported by the record, and reflected the limitations

13  assessed by examining internal medicine specialist Dr. Elahi.  AR 409.  The vocational expert

14  identified three jobs, furniture rental clerk (DOT[3] 295.357-018),[4] counter clerk for photo

15  ////

16

17        [3]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of
Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining

18  the skill level of a claimant's past work, and in evaluating whether the claimant is able to
perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.

19  1990).  The DOT classifies jobs by their exertional and skill requirements.  The DOT is a
primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

20

21        [4]  The DOT provides in relevant part:  295.357-018 FURNITURE-RENTAL
CONSULTANT (retail trade) alternate titles: decorator consultant; rental clerk, furniture

22   Rents furniture and accessories to customers: Talks to customer to determine furniture
preferences and requirements. Guides or accompanies customer through showroom, answers

23  questions, and advises customer on compatibility of various styles and colors of furniture items.
Compiles list of customer-selected items. Computes rental fee, explains rental terms, and

24  presents list to customer for approval. Prepares order form and lease agreement, explains terms
of lease to customer, and obtains customer signature. Obtains credit information from customer.

25  Forwards forms to credit office for verification of customer credit status and approval of order.
Collects initial payment from customer. Contacts customers to encourage followup transactions.

26  May visit commercial customer site to solicit rental contracts, or review floor plans of new
construction and suggest suitable furnishings. May sell furniture or accessories

1  finishing (DOT 249.366-010),[5] and restaurant host (DOT 349.667-014).[6]  AR 48.  Plaintiff

2  contends the ALJ committed error by not inquiring of the vocational expert whether this

3  testimony was consistent with the DOT.  Although no inquiry was made at the hearing, the court

4  finds such omission to be harmless.  *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1990)

5  (harmless error analysis applicable in judicial review of social security cases).  The ALJ

6

7

8      [5]  The DOT provides in relevant part:  249.366-010 COUNTER CLERK (photofinishing)
    Receives film for processing, loads film into equipment that automatically processes film for
9  subsequent photo printing, and collects payment from customers of photofinishing
    establishment: Answers customer's questions regarding prices and services. Receives film to be
10 processed from customer and enters identification data and printing instructions on service log
    and customer order envelope. Loads film into equipment that automatically processes film, and
11 routes processed film for subsequent photo printing. Files processed film and photographic prints
    according to customer's name. Locates processed film and prints for customer. Totals charges,
12 using cash register, collects payment, and returns prints and processed film to customer. Sells
    photo supplies, such as film, batteries, and flashcubes.

13     [6] The position of restaurant host is no longer available online in the DOT.  The DOT
    website (http://www.oalj.dol.gov/LIBDOT.HTM) notes the following:  The Dictionary of
14 Occupational Titles (DOT) was created by the Employment and Training Administration, and
    was last updated in 1991.  It is included on the Office of Administrative Law Judges (OALJ)
15 web site because it was a standard reference in several types of cases adjudicated by the OALJ,
    especially in older labor-related immigration cases. The DOT, however, has been replaced by the
16 O*NET.

17 The duties of a restaurant host are now described in O*NET (http://www.onetonline.org/) as
    follows:

18
    35-9031.00 - Hosts and Hostesses, Restaurant, Lounge, and Coffee Shop
19
    Greet guests and seat them at tables or in waiting areas.
20 Provide guests with menus.
    Assign patrons to tables suitable for their needs and according to rotation so that servers receive
21 an appropriate number of seatings.
    Speak with patrons to ensure satisfaction with food and service, to respond to complaints, or to
22 make conversation.
    Answer telephone calls and respond to inquiries or transfer calls.
23 Maintain contact with kitchen staff, management, serving staff, and customers to ensure that
    dining details are handled properly and customers' concerns are addressed.
24 Inspect dining and serving areas to ensure cleanliness and proper setup.
    Inform patrons of establishment specialties and features.
25 Receive and record patrons' dining reservations.
    Inspect restrooms for cleanliness and availability of supplies and clean restrooms when
26 necessary.

12

1   specifically noted in the written decision that the vocational expert's testimony was consistent

2   with the DOT.  AR 31.  Moreover, the court's review of the job descriptions in the DOT

3   demonstrates the ALJ was correct in her conclusion that the identified jobs were within

4   plaintiff's residual functional capacity, requiring the worker to push/pull with the upper

5   extremity and to reach, handle and feel on only an occasional basis.  Finally, plaintiff fails to

6   show any conflict between the DOT and the vocational expert's testimony.  *Cf. Massachi v.*

7   *Astrue*, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (procedural error harmless where no conflict).

8   On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

9          Accordingly, IT IS HEREBY ORDERED that:

10         1.  Plaintiff's motion for summary judgment or remand is denied;

11         2.  The Commissioner's cross-motion for summary judgment is granted; and

12         3.  The Clerk is directed to enter judgment for defendant.

13  DATED:  February 15, 2011.

14

15                          EDMUND F. BRENNAN
                            UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26